UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-30-TBR

AMOS WARREN LAMB,                                                          PLAINTIFF

v.

JAMIE JAMESON,                                                              DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Jamie Jameson's Motion to Dismiss, [DN 9]. Plaintiff Amos Warren Lamb has filed a response, [DN 10], and Defendant has replied, [DN 11]. This matter is therefore fully briefed and ripe for review. For the reason set forth herein, the Court will grant Defendant's Motion to Dismiss.

### I.   BACKGROUND

According to Plaintiff's Amended Complaint, [DN 4], he was arrested on or about July 26, 2021 on a bench warrant that had been issued on December 7, 2017. *Id.* at 2. The bench warrant was issued by Defendant, a judge in Calloway Circuit Court, because Plaintiff failed to appear for his arraignment in a criminal matter on December 5, 2017. *Id.* After Plaintiff's arrest in 2021, he was brought before Judge Jameson for his arraignment on the failure-to-appear charge, at which time the judge and the Commonwealth Attorney agreed that a summons had never been issued in the 2017 criminal case. *Id.* As a result, Plaintiff had never received notice of his December 5, 2017 arraignment, explaining why he failed to appear on that date. *Id.* Judge

Jameson then rescinded the warrant and reduced Plaintiff's bond. *See* [DN 1-3]. The Commonwealth Attorney later dismissed the 2017 charges.

Plaintiff filed his "Civil Right Complaint" in this case on February 28, 2022, alleging violations of 42 U.S.C. § 1983 and other federal laws. [DN 1]. Upon receiving a Notice of Deficiency regarding that Complaint, Plaintiff filed an Amended Complaint on March 16, 2022. [DN 3; DN 4]. In his Amended Complaint, Plaintiff seeks compensatory damages of thirty dollars a day for each of the days that he was jailed after his 2021 arrest and "[f]or what was charged for the ankle monitor" that he wore after posting bail. [DN 4, p. 2]. He also seeks punitive damages in the amount of ten million dollars. *Id.*

Defendant Jameson now seeks dismissal of this suit under Federal Rule of Civil Procedure 12(b)(6). Defendant argues that this matter should be dismissed on the basis of absolute immunity and for failure to state a claim upon which relief may be granted.[1] Plaintiff has responded, [DN 10], Defendant has replied, [DN 11], and this matter is therefore fully briefed and ripe for review.

**II.    LEGAL STANDARD**

Under Rule 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a

---

[1] Because the Court agrees that Defendant is entitled to absolute immunity in this case, it will not address Defendant's other arguments.

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III. ANALYSIS

As a "long line of [Supreme Court] precedent[] acknowledges," "a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (citations omitted). The Supreme Court has explained the principles surrounding this immunity:

> Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Id.* (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). Accordingly, judges are generally entitled to absolute judicial immunity from § 1983 civil suits. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) ("It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil

3

suits for money damages. Immunity from a § 1983 suit for money damages is no exception."

(citations omitted)).

>The Supreme Court has also explained the scope of this immunity:
>
>Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.

*Mireles*, 502 U.S. at 11 (citations omitted). Generally speaking, then, judges are entitled to immunity even when "acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" *Pierson*, 386 U.S. at 553–54 (quoting *Bradley*, 80 U.S. at 349, n.16).

This judicial immunity "is overcome in only two sets of circumstances." *Mireles*, 502 U.S. at 11. First, a judge cannot hide behind the shield of judicial immunity "for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (citations omitted). Whether an act is nonjudicial "relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his official capacity." *Id.* at 12. Importantly, it is the nature and function of the act—not the act itself—that is at issue in this analysis. *Id.* at 13. Thus, the Supreme Court has found judicial immunity intact where a judge directed his court officers to bring an attorney in the courthouse before him for a pending case, even though the officers used significant force in doing so (allegedly at the judge's direction). *Id.*

Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted). It is important to note, however, that acting in *excess* of judicial jurisdiction is insufficient to trigger this exception. *Id.*

at 12–13 ("If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978))); *see also Burnham v. Friedland*, No. 1:21-cv-1348, 2021 WL 3109626, *2 (N.D. Ohio July 22, 2021) (*citing Filip v. Flanagan*, 729 F. Supp. 1149 (N.D. Ohio 1989)).

In this case, Defendant argues that he is entitled to absolute judicial immunity. [DN 9, pp. 3–5]. He notes that, based on the allegations in the Amended Complaint, Plaintiff has alleged recklessness, or at most, malice. *Id.* at 4. More specifically, Plaintiff has alleged that Defendant knew or should have known that Plaintiff had never been served with notice of his 2017 arraignment, and therefore should never have issued the bench warrant for failure to appear. *See* [DN 4, p. 2]. Defendant argues that this is insufficient to overcome Judge Jameson's immunity, citing the law outlined above. In response, Plaintiff asserts that "Defendant Jameson had no probable cause and was without any jurisdiction to charge this Plaintiff with failure to appear." [DN 10, p. 1]. He does not explain how Defendant Jameson "was without any jurisdiction" other than to repeat his assertion that Defendant "knew or could of (sic) known that this plaintiff had not been notified" of the 2017 arraignment. *Id.*

The Court will grant the Motion to Dismiss. Even assuming that Defendant knew or should have known that Plaintiff had not been served with notice of the 2017 arraignment, Plaintiff has failed to allege facts sufficient to trigger either of the two immunity exceptions outlined above. The action at issue—issuing a bench warrant for failure to appear—is certainly a function normally performed by a judge, and Plaintiff was dealing with Judge Jameson in his judicial capacity. Thus, this was not a nonjudicial action, and that exception does not apply. Second, despite Plaintiff's conclusory allegation that Defendant acted "without any jurisdiction,"

5

there are no factual allegations whatsoever to support that allegation. Issuing the bench warrant was within Judge Jameson's judicial jurisdiction, and at most, the allegations suggest that he may have acted in excess of that jurisdiction by issuing it with malice. This is insufficient to trigger the second exception. The Court will therefore grant Defendant's Motion to Dismiss, [DN 9].

### IV. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Dismiss, **[DN 9]** is **GRANTED**. This matter is therefore **DISMISSED** and **STRICKEN** from the Court's active docket.

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 18, 2022

cc: Plaintiff, pro se
    Counsel of Record